Argued September 18; reversed September 30, 1947

# CASCIATO *v.* OREGON LIQUOR CONTROL COMMISSION

185 P. (2d) 246

*Wilber Henderson,* of Portland, for Oregon Liquor Control Commission, appellant.

No appearance for respondents.

Before Acting Chief Justice Lusk, Bailey, Hay, Winslow and Kelly, Justices.

KELLY, J.

This is an appeal from a decree of the Circuit Court of Multnomah County ordering the cancellation of an order of the Oregon Liquor Control Commission, hereinafter termed the Commission, suspending a restaurant liquor license therefore granted to Joseph and Croce Casciato. The reason assigned by the Commission for such suspension was that the licensees violated the provisions of the Oregon Liquor Control Act and the regulations of the Commission pursuant thereto by furnishing or serving alcoholic liquor, to-wit: beer, to persons under 21 years of age and by allowing minors to loiter on the licensed premises.

Upon appeal to the circuit court, the learned trial judge held that the Commission abused its discretion in ordering the suspension of the license in suit and therefore said trial court ordered the Commission to cancel its order of suspension. From the order of the trial court, the Commission appeals. The place where defendants were conducting their restaurant business was known as Rio Villa.

The statute, known by its terms as the Oregon Liquor Control Act, expressly provides, inter alia, that the Commission may cancel such a license, as the one in suit, if it finds, or has reasonable grounds to believe that the licensee knowingly has sold alcoholic liquor to persons under 21 years of age. Section 24-122, subsection 8, Vol. 3, O. C. L. A., pp. 211, 212.

The statute also expressly authorizes the adoption by the Commission of such regulations as are necessary

and feasible for carrying out the provisions of the Oregon Liquor Control Act, and that when such regulations are adopted, as provided by statute, they shall have the full force and effect of law. Subsection 8 of Section 24-122, O. C. L. A., Vol. 3, pp. 211, 212.

Subsection (r) of Regulation 3, promulgated by the Commission June 29, 1935, pursuant to the authority conferred by said subsection 8 of section 24-122, O. C. L. A., among other things, provides that—

"No licensee, his agent or employee, shall furnish for a valuable consideration any service to a person under 21 years of age * * * when such service is intended for or used in connection with the consumption of alcoholic liquor on the licensed premises."

The statute conferring the right of an appeal from an order of suspension or revocation of a license, such as the one in suit, further provides:

"If the court shall decide upon the trial of said appeal that the commission abused its discretion in suspending or revoking the license or permit, it shall enter a decree accordingly." Section 24-127, O. C. L. A., Vol. 3, p. 215.

The question before us therefore is whether the record discloses that the Commission abused its discretion in suspending the license in suit.

■ This court, speaking through Mr. Justice BELT, has said:

"Wide discretion is vested in the Commission to determine whether a license should be revoked or suspended. Courts should not interfere with the exercise of discretion by such administrative agencies, unless it plainly appears that there has been an abuse thereof." Perry v. Oregon Liquor Control Commission, — Or. —, 44 Ad. Sheets 209, 177 P. 2d 406.

■ There is a marked difference in the requirement of the criminal law giving effect to the well known principle that, in order to support a judgment of conviction of a crime, the evidence must be of such a character as to convince the trial court or jury beyond a reasonable doubt of guilt of the defendants, and the provision of the statute applicable to the instant case, which, as above stated, justifies the action of the Commission in cancelling such a license as the one in suit, if the Commission has reasonable grounds to believe that the licensees knowingly have sold alcoholic liquor to persons under 21 years of age.

This statutory authority does not even invoke the rule in civil cases that, for the party holding the affirmative to prevail upon an issue of fact, the evidence must preponderate in favor of such party.

The evidence upon which the action of the Commission is grounded consists of the testimony at the hearings conducted by said Commission's examiner, Mr. Sam Mothershead, on November 26, 1946, and November 29, 1946. This testimony was introduced at the trial in the circuit court pursuant to a stipulation made in open court by the parties through their attorneys.

The testimony so received of the minors, to whom the intoxicating liquor is alleged to have been supplied, is as follows.

At the first hearing held on November 26, 1946, Bernice Munger, called as a witness, testified:

"Lives at 8018 S. E. Boise street with her parents. Has lived in Portland all her life. Was born March 31, 1930 and is now 16 years of age. Knows the location of the Rio Villa and was in this place on September 26, 1946, accompanied by Delores Ferrell, Glen Gault, Donald Stark, and Jimmie Stemmons. Was served 5 glasses of beer

by the waitress on duty. Does not know the name of the waitress on duty and does not think she would be able to identify her again. Was not questioned as to her age and had never been in the place before. The beer was purchased by the three men of the crowd and she made no purchase herself. Went into the place around 8 or 8:30 in the evening and left at 1:00 A. M. the next morning. They were dancing and drinking beer. They went from there to Glen Gault's house. Were picked up a day or two later but the arrest was not in connection with this party.''

''Cross-examined by licensee and his manager said the service was made by a lady waitress. She did not know the waitress and is not certain that she could identify her at this time. They were dancing most of the time and there was a blind man playing the piano. There was also some young fellow playing a guitar and singing.''

Delores Ferrell, called as a witness, testified:

''Lives at 2321 S. W. Sheffield Avenue, Portland with her parents and has lived in Portland for the past 5 years. Was born February 2, 1932 and is now 14 years of age. Knows the location of the Rio Villa and was in this place on Sept. 26, 1946, in company with Bernice Munger, Glen Gault, Donald Stark and Jimmie Stemmons. Went in there about 8 or 8:30 and stayed until 1:00 the next morning. Was served several bottles of beer during the evening. Probably was served 7 or 8 beers. Made no purchase of beer herself and the purchases were made by the male members of the group. All the services made by the same waitress. She was not questioned as to her age. Has been in the place several times previously but was never served beer before. They went from there to Glen Gault's house.''

At the second hearing before said examiner held on November 29, 1946, Delores Ferrell recalled for cross-examination testified that—

''On September 26, 1946, she was at the Rio Villa

with Gault, Stark and Stemmons, She lives on Port-
land Heights. Could not be mistaken in the location
of the premises as it was formerly named Mac's
Broiler. Has been at the place several times before
but never alone. Went into the place this particular
evening about 8 or 8:30 P. M. and was served beer.
Could not identify any of the employees present in
the room. The matron who was on duty at the time,
the bartender and the waitress were all presented
to this witness for identification but she said she
was not sure as to the identity of any of them. Said
there was no one at the door when they went in but
she did see some woman who was apparently taking
care of the door most of the time. The group was
seated in a booth the entire evening when not
dancing. The beer was ordered and paid for by the
boys and she was not questioned as to her age. There
was a man playing the piano and it was to his music
they were dancing most of the time. There was also
a man singing and playing a guitar. No food was
served to or consumed by any of the group during
the evening. She was served 7 or 8 bottles of beer
and again testified she could not be mistaken in the
place. Said she had never been in trouble before
and always lived at home with her parents.''

At said second hearing on November 29, 1946, Ber-
nice Munger, recalled by the licensee, testified:

"Lives on Boise Street, four or five miles from
the Rio Villa. On the evening in question Delores
came to her home and they went from there to
Delores' house and from there to the Rio Villa. Says
she first told of this incident to the police matron
some time about the first of November when picked
up for late hours and arrested. Thinks Mrs. Unruh
is the same woman who was at the door part of the
time during the evening but can not be certain of
this and can not identify any of the other employees.
Gault lives on Gladstone Street, about one block
from her home. Had been at the Rio Villa once
before and had coke. Did not ask for beer on this

first visit. Had never been in trouble before and lives with her parents. Could not be mistaken in the place because she has passed there often. There was a blind man playing the piano and a young man playing a guitar and singing. They stayed there until 1:30 A. M. dancing and drinking beer. The place was fairly well lighted. She was not questioned as to her age. Is now in custody of the Juvenile Court. Says she made an error in her direct testimony a few days ago in saying she had never been in the place before. Recalled after leaving the hearing that she had been in there once before but did not order or consume any beer.''

In behalf of the licensees, Mrs. Frances E. Unruh, a dance hall matron under the direction of the dance inspector of the Portland Police Department, testified in the circuit court that on the 26th of September, 1946, she was in the employ of the licensees as a dance hall matron; that she could not recall seeing the two girls to whom it is alleged the licensees furnished beer in the place of business of licensees on the date named, and that she didn't think they were there. This witness was asked:

"Q. You would have seen them?''

To which she answered:

"I certainly would have noticed them.''

Mrs. Elaine Renish, a waitress in the employ of licensees, testified in the circuit court that she was the only waitress there on the night in question and that she did not see the two girls above mentioned at that time.

Joseph Casciato, one of the defendants herein, testified in the circuit court that he was present at the place of business in suit on the night in question.

The following is an excerpt from Mr. Casciato's direct testimony:

"Q. What were you doing there?

"A. Well, I work in the front bar and I go up and down each side where they dance and dine and I see that everything goes all right, no trouble of any kind, no minors come in.

"Q. You saw Bernice Munger and you saw Delores Ferrell at the Liquor Control Office at the hearing?

"A. Yes, sir.

"Q. Did you ever see them in your place at any time?

"A. No, I never saw them."

Mr. Stanley E. Reed, a member of the Portland Police Force, testified that he was acquainted with defendant Joe Casciato; that he had frequented Mr. Casciato's place of business and that the general reputation of the place was good.

From the foregoing, it will be seen that there was a conflict in the testimony. The question therefore is whether it appears that in deciding that the testimony of the two girls was true and for that reason ordering a suspension of the license in suit, the Commission abused its discretion.

In a criminal case, where the defendant was charged with the crime of murder in the first degree and after the testimony for the prosecution had been heard defendant withdrew his plea of not guilty and entered a plea of guilty, whereupon the trial judge found him guilty as charged without recommendation of leniency and thereafter sentenced the defendant to be electrocuted, the Supreme Court of Ohio gave consideration to the question whether there had been an abuse of discretion on the part of the trial judge in thus disposing of the trial.

We quote from the unanimous opinion of the Ohio Supreme Court, speaking through Judge Robert H. Day:

"What is judicial discretion? Bouvier's Law Dictionary gives this definition:

'Abuse of discretion. A discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'

The term is comprehensively defined in 18 Corpus Juris, p. 1135, as follows:

'This authority may be said, in a general way, to be the power of the judge to rule and decide as his best judgment and sound discretion dictate; and the term "judicial discretion" or "discretion of the court" is usually employed as designating the power mentioned. There are different kinds of discretion that may be exercised by the trial court; there is a discretion in the right to decide as the court pleases, or in the decision of what is just and proper under the circumstances, or according to the judgment of the court; but in all cases courts must exercise a discretion in the sense of being discreet, circumspect, and prudent, and exercising cautious judgment. * * * However incapable of exact definition, it is clearly recognized that discretion is not absolutely without elements, conditions, or limitations. The term implies the absence of a hard and fast rule, yet it should not be another word for "arbitrary will," "inconsiderate action," or "unstable caprice." '

Other definitions as made by the courts are as follows:

In *Sharon v. Sharon, Exr.,* 75 Cal. 1, 16 P. 345, the court said:

' "Abuse of discretion" * * * does not necessarily imply a wilful abuse, or intentional wrong. In a legal sense, discretion is abused wherever, in its exercise, a court exceeds the bounds of reason— all the circumstances before it being considered.'

In *Murray v. Buell*, 74 Wis. 14, 41 N. W. 1010, this definition was given:

'The term * * * as used in the decision of courts and in books, implying, in common parlance, a bad motive or wrong purpose, is not the most appropriate. It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence.'

'Where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment, it is an abuse of discretion.' Words and Phrases.'' *State v. Ferranto,* 112 Ohio St. 667, 676, et seq. 148 N. E. 362.

In a case involving the question under discussion, the Supreme Court of Vermont, at the conclusion of its opinion, speaking through Mr. Justice Moulton, said:

"It is enough for us to say that, all in all, the record does not show that the discretion of the Court was exercised on grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable, without which no abuse of discretion is made to appear." *Belock v. State Mutual Fire Insurance Company,* 106 Vt. 435, 175 Atl. 23, citing *Temple, et ux v. Atwood,* 99 Vt. 434, 435, 134 Atl. 591; *Schlitz v. Insurance Co.,* 96 Vt. 337, 342, 119 Atl. 513; *New England Box Co. v. Tibbets,* 94 Vt. 285, 290, 110 Atl. 434.

In the following Oklahoma cases, the definition quoted from Bouvier in *State v. Ferranto,* supra, is applied: *Kinnear v. Dennis,* 97 Okla. 206, 223 P. 383; *Trimmer v. State,* 142 Okla. 278, 286 P. 783; *State ex rel v. State ex rel Shull,* 142 Okla. 293, 286 P. 891.

■ While the principle, that where judicial discretion is given to a court, the action of such court will not be overruled or reversed unless it be shown that such court abused its discretion is supported by the authorities above quoted and cited, that principle is

equally applicable to the orders of administrative bodies vested with discretion in making or refusing to make such orders.

We quote from a New York case:

"In the absence of any indication that the Authority acted unreasonably or arbitrarily, the issuance of a license is entirely in its discretion and should not be interfered with by the court. The Authority may be required to receive a petition and to act thereon (citing authorities), but having acted neither arbitrarily nor unreasonably, the court cannot interfere." *Usdane v. Bruckman, et al.*, 30 N. Y. S. 2d 396, 397, citing *Reckler v. Quinn, et al.*, 255 App. Div. 873, 7 N. Y. S. 2d 671; Id. 280 N. Y. 768, 21 N. E. 2d 526; *Fenson v. State Liquor Authority*, 152 Misc. 446, 273 N. Y. S. 751; Id., 243 App. Div. 847, 278 N. Y. S. 433.

We also quote from a New Jersey case:

"Whether an original license should issue or a license be renewed rests in the sound discretion of the issuing authority. Unless there has been a clear abuse of discretion this court should not interfere with the actions of the constituted authorities. (citing authorities) We find no such abuse. The liquor business is one that must be carefully supervised and it should be conducted by reputable people in a reputable manner. The common interest of the general public should be the guide post in the issuing and renewing of licenses." *Zicherman v. Driscoll*, 133 N. J. L. 586, 588, 45 At. (2d) 620.

The record in the case at bar is such that we are unwilling to say that the Commission exercised its discretion to an end or purpose not justified by, and clearly against, reason and evidence.

The decree of the circuit court is reversed, the cancellation of the Commission's order suspending defendants' license is vacated and set aside, and the Commission is awarded judgment for its costs and disbursements.