# STATE OF OREGON,
*Respondent,*

*v.*

# PHILIP DUNCAN,
*Appellant.*

## (10-92-04239; CA A79951)

883 P2d 913

Hari Nam S. Khalsa, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant was convicted by a jury of attempted first degree sodomy. ORS 163.405; ORS 161.405. On appeal, defendant contends that the trial court committed evidentiary error by allowing the prosecutor to elicit the child victim's statements that: (1) he believed in God, (2) he believed God would send him to hell if he lied, and (3) he went to church every weekend. Defendant argues that the reference to the victim's religious beliefs impermissibly bolstered the victim's credibility in violation of the Oregon Evidence Code and the Oregon Constitution.[1] We affirm.

At trial, the following exchange took place during the victim's testimony:

"[PROSECUTOR:] Okay. [Witness,] do you believe in God?

"[WITNESS:] Yes.

"Q. What do you think God would think if you told a lie about [defendant]?

"[DEFENDANT'S COUNSEL]: Your Honor, I object. Counsel shouldn't be asking about religious beliefs of this witness, or any other witness. I think it's an improper question.

"THE COURT: [Prosecutor]?

"[PROSECUTOR]: Well, I think with a child and with the cross-examination we've had it's a fair inquiry into his understanding of the circumstances and his commitment to be truthful.

"THE COURT: I'm going to overrule the objection in this circumstance.

"[PROSECUTOR]: What do you think God would think * * * if you told a lie about [defendant]?

"[WITNESS:] (Shrugging his shoulders.)

"Q. Would he be happy with you?

"A. No. When I die he would send me to hell.

---

[1] Defendant claims that his "federal constitutional rights were also violated in regards to the separation of church and state (first amendment) and the guarantee of a fair trial (fourteenth)." However, defendant makes no argument in support of those claims. In the absence of any discussion on those claims, we will not address them.

"Q. Okay. Does your grandma take you to church?

"A. Yes.

"Q. You go every weekend?

"A. Yes, every weekend."

When defendant moved for a mistrial at the close of the state's case-in-chief, the state argued:

"I think with a young child whose understanding of the world is, obviously, something different than an adult's understanding, this bit of evidence, *while it is bolstering*, it's different than the state calling an adult witness and saying something similar to an adult witness. This is a child who said he believed in the Easter bunny and Santa Claus and the tooth fairy. And I think this bit of testimony is useful for a jury in evaluating someone of his tender years." (Emphasis supplied.)

The court denied defendant's motion for the mistrial and the jury found defendant guilty of attempted first degree sodomy.

■　　On appeal, defendant contends that the case against him was, in essence, a credibility battle between defendant and the victim. Defendant argues that the admission of the testimony regarding the victim's religious beliefs impermissibly bolstered his credibility. The state contends that a trial judge ought to have latitude in permitting questioning about religious beliefs when the witness is a child and may have difficulty articulating his awareness of the importance of telling the truth. The state argues that the questioning was proper, because it was general and did not delve deeply into the particular tenets of the victim's beliefs. The state also contends that, "[w]hile defense counsel did not 'open the door' directly to questioning on matters of religion, counsel certainly made the victim's truthfulness an issue." Thus, the state concludes that the prosecutor "properly attempted on redirect examination to establish that the victim's commitment to tell the truth in court was sincere and substantial." We disagree.

　　Article I, section 6, of the Oregon Constitution provides:

"No person shall be rendered incompetent as a witness, or juror in consequence of his opinion on matters of religeon

(sic); nor be questioned in any Court of Justice touching his religeous (sic) belief to affect the weight of his testimony."

This concept is embodied in the Oregon Evidence Code as well. OEC 610 provides:

"Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the credibility of the witness is impaired or enhanced."

The Supreme Court explained the history underlying those prohibitions on references to religion in *State v. Estabrook*, 162 Or 476, 500, 91.P2d 838 (1939):

"At common law, one who did not believe in the existence of a Supreme Being and consequently was under no apprehension of future punishment for his falsehood was incompetent to testify." (Citations omitted.)

That rule has been rejected in most, if not all, other jurisdictions. 162 Or at 500. In *Estabrook*, the court quoted with approval from an Arizona Supreme Court case which construed the language of a parallel constitutional inhibition and held that the language is

"a direct prohibition against questioning any witness as to his religious belief, for the purpose of affecting his credibility. The language is positive and explicit." *Tucker v. Reil*, 51 Ariz 357, 363, 77 P2d 203 (1938), *quoted in State v. Estabrook, supra*, 162 Or at 502.

The state urges us to hold that Oregon's constitutional and evidentiary prohibitions extend only to inquiries about a witness' specific religious affiliations, the tenets of his or her church, or the particulars of the witness' beliefs. However, in light of the prejudice that the constitution was originally designed to guard against, namely, the opinion that a witness who believes in a supreme being is more credible than one who does not, we reject the state's argument that general questioning about a witness' belief in God is permissible. The state's argument that the questioning was proper "to establish that the victim's commitment to tell the truth in court was sincere," is based upon the very premise that the constitution seeks to prevent juries from considering.[2] The

---

[2] The state's brief seems to suggest that the prosecutor was attempting to qualify the victim as a witness, rather than bolster his credibility. That is not

only possible purpose for the testimony was to bolster the witness' credibility by showing that, because the witness believed in God and punishment in hell if he told untruths, the witness was testifying truthfully. That result flies in the face of the constitutional and evidentiary prohibitions. Likewise, we reject the state's argument that the testimony was permissible because defendant's counsel put the victim's truthfulness at issue. Nothing in the language of the constitution or the evidence code suggests that the prohibition becomes inapplicable in situations where a witness' truthfulness has been questioned. Allowing the prosecutor to question the victim concerning his religious beliefs was error. Consequently, we must determine whether the error requires reversal.

■ ■   Evidentiary error is not presumed to be prejudicial and does not require reversal if there is little likelihood that the error influenced the verdict. *State v. Busby*, 315 Or 292, 299, 844 P2d 897 (1993); *State v. Hansen*, 304 Or 169, 743 P2d 157 (1987); *State v. Zelinka*, 130 Or App 464, 476-77, 882 P2d 624 (1994).

The first statement by the victim, that he believed in God, was admitted without objection. Therefore, we will not entertain defendant's arguments with regard to that statement. OEC 103. A statement similar to the second statement, that the victim believed he would go to hell if he lied, subsequently was admitted into evidence without objection. The victim had participated in a videotaped interview which was played for the jury. When the videotape was offered into evidence, the court engaged in the following colloquy with defendant's counsel:

"THE COURT:   [Defense counsel,] have you had a chance to examine [the videotape]?

"[DEFENDANT'S COUNSEL]:   Yes, your Honor, I've seen it.

"THE COURT:   Any objection?

"[DEFENDANT'S COUNSEL]:   No."

---

supported by the record. The prosecutor admitted at trial that the testimony bolstered the witness' credibility. We express no opinion about whether similar questioning might be proper in the context of determining, outside the presence of the jury, whether a child is qualified to serve as a witness.

In the videotaped interview, when responding to the question of whether he knew the difference between the truth and a lie, the victim stated, "[i]f you tell a lie, you go get burned, you burn up in hell." That statement was almost identical to the earlier statement that defendant objected to. Because defendant failed to object when the same statement was offered by way of videotape, and there is no record of a continuing objection, we hold that the error involved in admitting the prior statement was harmless. *See Savage Adm'x v. Palmer et al*, 204 Or 257, 271, 280 P2d 982 (1955).

■        The only testimony that remains to be addressed is the last statement by the victim, that his grandmother takes him to church every weekend. The question of whether that statement likely affected the verdict must be considered in the context of the witness' other testimony. The victim's first two statements, that he believed in God and believed that he would go to hell if he lied, were before the jury without objection. In light of those statements, we cannot say that the victim's statement about going to church on the weekends likely affected the verdict.

Affirmed.