Argued and submitted August 5, 1998, affirmed July 7, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# MONTIAE COLDEN MCHENRY,
*Appellant.*

## (960734923; CA A96749)

985 P2d 873

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Wollheim and Brewer,* Judges.

BREWER, J.

---

* Brewer, J., *vice* Riggs, P. J., resigned.

## BREWER, J.

Defendant appeals from his conviction for assault in the third degree following a jury trial. ORS 163.165. He makes four assignments of error. First, defendant asserts that the trial court erred by admitting medical testimony that the victim's injuries resulted from child abuse. Second, he contends that the court erred by not holding an OEC 104 hearing to determine whether the state could lay a proper foundation for the admission of the child abuse diagnosis. Third, defendant asserts that a police officer's testimony that it is common for suspected child abusers to deny abusing their victims constituted an impermissible comment on defendant's credibility. Finally, he argues that the trial court's exclusion of a videotape showing the scene of the crime was error. For the reasons that follow, we affirm.

On appeal from a conviction, we review the facts in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991). Defendant and his girlfriend discovered her two-year-old son playing with feces and were concerned that fecal matter had gotten into his eyes. They took the child to the hospital, where doctors diagnosed the child with second degree burns on both hands. Defendant explained to the doctors that the child was burned with hot water while defendant was cleaning the feces off the child's hands. The child's right hand required a surgical skin graft. From the burn pattern, the doctors determined that the burn occurred from immersion in scalding water. The doctors suspected that the injuries resulted from child abuse rather than an accidental injury, because they believed it was unlikely that the boy willingly immersed his hand in water long enough to receive a second-degree burn. The doctors forwarded that information to the police, who eventually arrested defendant. Defendant was charged with assault in the first degree, ORS 163.185, and criminal mistreatment in the first degree, ORS 163.205. The jury found him guilty of assault in the third degree, a lesser-included offense. This appeal followed.

Before trial, defendant moved *in limine* to exclude any expert medical testimony that the injuries were the

result of "child abuse." The trial court denied that motion. Defendant also requested an OEC 104 hearing to determine whether a medical diagnosis of "child abuse" was valid scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984).[1] The court denied that motion as well. On appeal, defendant first argues that the trial court erred when it allowed Dr. Lukschu, one of the treating physicians, to testify that the injuries occurred during an episode of "child abuse." He asserts that a diagnosis of child abuse is scientific evidence that requires a *Brown* analysis to determine its admissibility.[2] On the merits, the state responds that a medical diagnosis of child abuse is not scientific evidence within the meaning of *Brown* and, therefore, the state did not need to lay a *Brown* foundation before eliciting that diagnosis from the doctors.

■      As a threshold matter, the state contends that defendant waived his objection regarding Lukschu's use of the "child abuse" diagnosis because defendant elicited that diagnosis when he cross-examined Dr. Baro. The state relies on *State ex rel Juv. Dept v. Cook*, 325 Or 1, 932 P2d 547 (1997). In that case, the defendant introduced statements that he had unsuccessfully tried to suppress earlier with a pretrial motion. *Id.* at 3-5. The Supreme Court held that the defendant's decision to testify about those statements eliminated the possibility that the trial court's ruling on the pretrial motion harmed him. *Id.* Here, by contrast, defendant did not

---

[1] To determine the admissibility of scientific evidence under *Brown* the court developed a test whereby the trial court evaluates the evidence using the following factors:

"(1)  The technique's general acceptance in the field;

"(2)  The expert's qualifications and stature;

"(3)  The use which has been made of the technique;

"(4)  The potential rate of error;

"(5)  The existence of specialized literature;

"(6)  The novelty of the invention; and

"(7)  The extent to which the technique relies on the subjective interpretation of the expert." 297 Or at 417.

[2] Defendant also contends that allowing the doctors to testify that they believed that the injuries resulted from child abuse amounted to an impermissible comment on defendant's credibility. Defendant did not raise that argument to the trial court; therefore, it is not preserved, and we do not address it further. *See* ORAP 5.45(2).

choose to introduce the diagnosis on direct examination. Instead, he elicited it on cross-examination after the state introduced it on direct examination of Baro.[3] The logic of *Cook*, that a party cannot be heard to complain after making the strategic decision to introduce evidence, is absent here because the state, not defendant, introduced the evidence.[4] Thus, defendant did not waive his motion *in limine* when he cross-examined Baro regarding his diagnosis. We therefore turn to the merits of defendant's first and second assignments of error.

Defendant argues that the trial court erred in admitting Lukschu's diagnosis of "child abuse." He contends that the court erred in failing to hold a hearing under OEC 104 to assess the scientific validity of the diagnosis. He also contends that the trial court erred in concluding that the testimony was admissible scientific evidence. At trial, however, defendant's objection was more limited. He did request a hearing under OEC 104, but he did not challenge the scientific validity of Lukschu's diagnosis of intentional injury. Instead, he contended that the use of the term "child abuse" was not relevant, and if relevant, was more prejudicial than probative:

> "The doctors should be allowed to testify, they're able to give the opinion that the burn is consistent with what they believe to be an intentional infliction of injury and that's what I'm expecting that they will say because that is an issue in this case, and that it is obvious that the complainant is, in fact, a child.

> "The phrase 'child abuse' and whether or not it meets an episode of child abuse is not an issue so they should not be allowed to use that phrase.

> "As you know, that phrase is very prejudicial, and what it draws up in our mind is something different than the issue in this case."

---

[3] The state argues that Lukschu was the only witness to testify about child abuse on direct examination. The state is mistaken. Baro also testified on direct examination about child abuse.

[4] Defendant did not need to object—or suffer waiver—when Baro used that phrase on direct examination because he had already preserved his arguments with his pretrial motion. *See Davis v. O'Brien*, 320 Or 729, 738-39, 891 P2d 1307 (1995).

Later, trial counsel reiterated:

"And I don't have a problem with talking about the child the State has pictured. Everyone's going to say, to know it's going to be a child. I don't have a problem with the doctors testifying, with their medical opinion about how the injury occurred because those are issues of the case.

"The State has yet to explain how using the phrase 'child abuse,' one, is relevant other than saying it appears to be an emersion [sic] burn, why there is a difference, and even if it is relevant, that particular phrase, the Court can convince the State and in an effort to make sure [defendant] gets a fair trial and the jury is not swayed by the prejudicial affect [sic] that that word conjures up in our heads and not confused about the issue in this case."

As the Supreme Court explained in *State v. O'Key*, 321 Or 285, 298-99, 307, 899 P2d 663 (1995), an OEC 104 hearing may accomplish several different objectives with respect to "scientific" evidence. It may establish the relevance of expert testimony under OEC 401.[5] It may establish the extent to which the relevance is outweighed by unfair prejudice in admitting the evidence under OEC 403.[6] And it may establish the validity of the evidence under OEC 702.[7] *Id.* at 298-99.

We review the trial court's ruling as to relevance under OEC 401 as a question of law. *Fugate v. Safeway Stores, Inc.*, 135 Or App 168, 173, 897 P2d 328 (1995). The "child abuse" label was used by the testifying physicians to broadly define their conclusions. Accordingly, the term had

---

[5] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[6] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

[7] OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

logical relevance to the explanation of those opinions and was not subject to exclusion under OEC 401.

■■ We review the trial court's ruling under OEC 403 *de novo* where scientific evidence is allegedly at issue. *State v. Lyons*, 324 Or 256, 279 n 30, 924 P2d 802 (1996). The use of the term "child abuse" was scarcely more prejudicial to defendant than was testimony concerning the nature of the underlying injury suffered by the child. For example, the unchallenged evidence showed that the child's hands were burned so badly that the skin sheeted off the palms and the back of the hand. One of the doctors testified that it would take 15 seconds in 134 degree water for such an injury to occur. Ultimately, the term "child abuse" was part of the physicians' diagnoses that the child was intentionally injured. Therefore, the trial court did not err by refusing to excise it from the record under OEC 403.

■ In requesting an evidentiary hearing under OEC 104, defendant did question the scientific basis of a diagnosis of child abuse, a challenge that appeared to invoke an inquiry under OEC 702. The trial court conducted an *in camera* colloquy with counsel in order to ascertain the parties' positions but determined that an evidentiary hearing was not required. We review the trial court's decision whether to hold a preliminary hearing *in camera* to determine the admissibility of evidence for abuse of discretion. *State v. Stanley*, 30 Or App 33, 35-36, 566 P2d 193, *rev den* 280 Or 1 (1977).

■ Defendant's request for a hearing was part of the same colloquy between the court and counsel quoted above. Immediately after making the request, defendant reiterated his position that the child abuse label was not relevant but did not withdraw his concession that Lukschu could give his opinion that the injury was intentionally inflicted:

> "And, you know, it's really, basically, whether or not it fits, whether or not it has *probative value* in this particular case that it is child abuse other than the diagnosis that it is an intentional burn or appears to be an intentional-type burn * * *." (Emphasis added.)

Defendant does not assign error to the admission at trial of any medical opinion testimony other than the child abuse

description the state's witnesses appended to their diagnosis of intentional injury. Under the foregoing circumstances, the trial court's decisions to permit the use of the term "child abuse" and to deny an evidentiary hearing under OEC 104, if erroneous, were harmless error.[8]

■    We turn next to defendant's third assignment of error, in which he argues that the trial court erred in allowing one of the investigating police officers to testify that, in his experience, it was common for suspected child abusers to deny abusing their victims. Defendant contends that the officer's testimony amounted to an impermissible comment on defendant's credibility. However, similar testimony was elicited from the same witness without objection after defendant's first objection was overruled and the challenged testimony was received.[9] There is no record of a continuing objection. Therefore, assuming without deciding that the trial court erred, the error was harmless. *State v. Duncan*, 131 Or App 1, 7, 883 P2d 913 (1994), *rev den* 320 Or 508 (1995).

■    In his final assignment of error, defendant claims that the court erred by excluding a videotape that depicted an attempted recreation of the circumstances leading to the child's injury. The trial court excluded the tape pursuant to OEC 403 because it decided that the tape would confuse the

---

[8] Trial judges should permit parties to make an adequate record for appeal, including an evidentiary record when appropriate. Nothing we have said in this opinion should be interpreted to take a contrary view.

[9] The trial court overruled defendant's attorney's objection to the following question and answer:

"Q. Is it unusual in your experience in those 140 cases that you've investigated for a suspect to deny abusing the victim?

"[DEFENDANT'S ATTORNEY]: Objection * * *.

"THE COURT: Overruled. Proceed.

"THE WITNESS: It's very common for them to say it was an accident."

That ruling is a focus of defendant's third assignment of error. However, no objection was made to the two immediately ensuing questions and answers:

"Q. For [suspects] to say it was an accident and deny it?

"A. Yes, initially we're lied to quite a bit.

"Q. And sometimes even when you confront a suspect with additional information they still maintain it was an accident?

"A. Yes."

jury. We review that ruling for an abuse of discretion. *See State v. Williams,* 313 Or 19, 29-30, 828 P2d 1006, *cert den* 506 US 858 (1992). We cannot say that the court's ruling in this case is clearly against reason and evidence, and, therefore, an abuse of discretion. *See Casciato v. Oregon Liquor Control Com.,* 181 Or 707, 717, 185 P2d 246 (1947).

Affirmed.