Argued and submitted May 4, decision of the Court of Appeals reversed; orders of the
Workers' Compensation Board vacated and case remanded to the Workers'
Compensation Board for further proceedings September 2, 1993

In the Matter of the Compensation of
Richard A. Colclasure, Claimant.

Richard A. COLCLASURE,
*Petitioner on Review,*

*v.*

WASHINGTON COUNTY
SCHOOL DISTRICT NO. 48-J,
*Respondent on Review.*

(WCB 88-15666; CA A67543 (Control))

In the Matter of the Compensation of
Richard Colclasure, Claimant.

Richard COLCLASURE,
*Petitioner on Review,*

*v.*

BEAVERTON SCHOOL DISTRICT NO. 48-J,
*Respondent on Review.*

(WCB 89-05949; CA A67666; SC S39928)

857 P2d 126

Merrill Schneider, of Schneider, DeNorch & Galaviz-Stoller, Portland, argued the cause for petitioner on review. Daniel J. DeNorch filed the petition.

Patric J. Doherty, of VavRosky, MacColl, Olson, Doherty & Miller, P.C., Portland, argued the cause for respondents on review. With him on the response was Karli L. Olson.

Kevin Keaney, of Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, filed an *amici curiae* brief on behalf of the Oregon Workers' Compensation Attorneys and Oregon Trial Lawyers Association.

FADELEY, J.

**FADELEY, J.**

In this workers' compensation case, the dispositive issue is the proper scope for a hearing referee's review of an order of the director of the Department of Insurance and Finance under ORS 656.283(2).[1]

Claimant suffered a work-related back injury in 1982. The claim was closed in 1984 with an award of unscheduled permanent disability. Claimant returned to his usual work with the employer. After experiencing intermittent back problems at work and consulting both his treating physician and a psychiatrist, claimant filed a claim for aggravation of his back injury on February 9, 1987. One month later, claimant asserted a new issue, that he suffered from a psychological stress condition arising from his original 1982 back injury. The employer initially reopened the claim, but then issued a denial on May 26, 1987, denying both the injury aggravation claim and any responsibility for the psychological stress condition. Claimant and his employer's insurance carrier entered into a stipulation and disputed claim settlement with the employer in 1987. The parties agreed that:

> (1) under the heading of "Aggravation of Low Back," claimant should be paid an additional percentage for unscheduled disability for "additional loss of earning capacity," doubling the amount of that disability provided by the 1984 order, and

> (2) claimant would be referred for "whatever vocational assistance to which he is administratively entitled."

The parties additionally agreed, under the heading of "Psychological Stress Claim," that claimant's psychological condition was not a compensable consequence of his undisputedly disabling 1982 injury at work.

Lastly, the parties stipulated that claimant would resign his position as a custodian with the employer and expressly agreed that the employer had no suitable work available for claimant. The stipulation explained the reason why the resignation was in order by acknowledging that

---

[1] The text of ORS 656.283(2) is quoted and discussed below.

claimant's "low back condition in conjunction with his psychological stress condition has rendered him *physically* incapable of performing any type of employment at" the employer's work place. (Emphasis added.)

When claimant later applied for vocational assistance, it was denied on the basis of "ineligibility" by the vocational assistance provider engaged by the employer. Denial was stated to be on the ground that claimant left work for reasons unrelated to his compensable injury. The denial of eligibility was based on a contact between Columbia Rehabilitation Consultants, the rehabilitation provider hired by claimant's employer, and a member of the director's staff assigned to the Rehabilitation Review section of the Department of Insurance and Finance. The service provider reported on January 21, 1988, in a letter to claimant and the employer's agent:

> "I staffed your file with the Rehab Review Section. They informed me that the Stipulation signed on 12/15/87 is not sufficient to provide vocational assistance as there was no accepted aggravation reopening your claim."

That legal conclusion — that there was no cognizable aggravation — arrived at between the private rehabilitation consultants and the state agency, became the dispositive determination in the later stages of administrative consideration of claimant's eligibility for vocational rehabilitation assistance. There is no other record of the discussion between the two or of what facts, if any, were considered by them in arriving at that dispositive conclusion.

Following denial of vocational assistance on grounds of ineligibility based on the "no aggravation" conclusion, claimant sought review by the director under ORS 656.283(2). After negotiations, the department issued a "Letter of Agreement" based on contacts with representatives of both parties, stating in part as follows:

> "ISSUES

> "Whether [claimant] is eligible for vocational assistance.

> "Whether the Stipulation/Disputed Claims Settlement and Order of Dismissal, dated December 15, 1987, intended to

acknowledge that [claimant] sustained an accepted aggravation to his low back on February 9, 1987.

"AGREEMENTS

"Both the insurer's attorney and worker's attorney agree that the above stipulation intended that a dry aggravation was to be accepted, and vocational eligibility would be determined.

"[Claimant] will be referred to Columbia Rehabilitation *for eligibility determination only*. If it is determined that [claimant] is eligible for vocational services, a mutually agreed upon vocational rehabilitation organization will be decided upon.

"If any party disagrees with any of the statements in this agreement, please contact me by March 16 to advise of corrections." (Emphasis added.)

That letter served as the department's initial ruling on the claimant's request for review.

The service provider again denied that claimant was eligible for vocational assistance. Claimant requested review of that eligibility decision by the director pursuant to ORS 656.283(1) and (2). The director again ruled that claimant was ineligible for consideration for vocational assistance, stating that claimant "left this job in February 1987, not because of any physical difficulties in performing his job duties, but because of psychological stress," a noncompensable condition. The director recognized that the parties may have had a different intention than his ruling. He stated: "While the intent of the parties to the December 15, 1987, Stipulation and Order may have been to recognize * * * aggravation of [claimant's] back injury," that did not matter. The director explained:

"[I]n the absence of a reopening of [claimant's] back injury claim and evidence that he stopped working because of a worsening of his back condition, there is no causal link between the injury and the need for vocational assistance. What the parties intended in this regard, therefore, has no bearing on the issue of vocational assistance."

In arriving at that conclusion, the director developed no evidentiary record and held no evidentiary hearing. Dissatisfied, claimant requested further review before a hearing referee, pursuant to ORS 656.283(1) and (3).

The referee found that claimant left work for a good reason, one related to the disability from his compensable injury, and, thus, that claimant was eligible for vocational services. The employer then appealed to the Workers' Compensation Board on the ground that, under ORS 656.283(2), the referee could not find facts different from those on which the director could have based his action, whether or not the director's version of the facts was found in the administrative record or was based on evidence in that record at the time of the director's decision. The Board — apparently deciding to apply to its review, by analogy, the standard applicable to judicial reviews of agency determinations that are based upon a full record and findings of fact made under procedures that comport with due process — agreed with the employer. A majority of the Board held that the referee was not permitted to find facts in relation to a review to determine eligibility for vocational assistance.[2] The Court of Appeals affirmed. *Colclasure v. Wash. County School Dist. No. 48-J*, 117 Or App 128, 843 P2d 953 (1992).

The statute authorizing both hearings before referees and reviews of the director's vocational assistance decisions is ORS 656.283, which provides in part:

"(1) Subject to subsection (2) of this section and ORS 656.319, any party or the director may at any time request a hearing on any question concerning a claim.

"(2) If a worker is dissatisfied with an action of the insurer or self-insured employer regarding vocational assistance, the worker must first apply to the director for administrative review of the matter before requesting a hearing on that matter. Such application must be made not later than the 60th day after the date the worker was notified of the action. The director shall complete the review within a reasonable time, unless the worker's dissatisfaction is otherwise resolved. The decision of the director may be modified only if it:

"(a) Violates a statute or rule;

"(b) Exceeds the statutory authority of the agency;

"(c) Was made upon unlawful procedure; or

---

[2] The Board also stated: "The parties further agreed that claimant's compensable condition [*i.e.*, his low back injury] had aggravated * * *."

"(d)   Was characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The legal issue to be resolved in this case is whether a referee has authority, when reviewing a vocational assistance decision of the director under ORS 656.283(2), to find facts independently before exercising his or her power. In answering that question, we follow the usual trail: We first examine the text and context of the pertinent statute, then, if the text and context are ambiguous, look to legislative history and, if those avenues of inquiry do not answer the question, we look to other aids. *Bartz v. State of Oregon*, 314 Or 353, 357-58, 839 P2d 217 (1992).

The first few parts of this effort may be summarized easily. The statute's text does not decide the question. Neither can we find assistance in the context of the statute within the Workers' Compensation Law itself. Neither does an examination of the legislative history of the statute enlighten us; it appears that the legislature did not give conscious consideration to the fact-finding role, if any, that the hearing referee would play. This leaves us looking for guidance in the broader administrative law context in which cases like this one traditionally are resolved.

There can be no doubt that the proceeding before the referee is a classic contested case. It is "a proceeding before an agency [i]n which the individual legal rights * * * of specific parties are required by statute * * * to be determined only after an agency hearing at which such specific parties are entitled to appear and be heard." ORS 183.310(2)(a), 2(a)(A).[3] The individualized nature of the proceeding is made clear by the context of statutes and administrative rules governing eligibility for vocational assistance for persons suffering from disabling injuries incurred on the job.

---

[3] The contested case procedures of the Oregon Administrative Procedures Act (APA), of which ORS 183.310 is a part, do not apply directly to proceedings under ORS chapter 656. ORS 183.315. However, we use the definition of "contested case" from the APA as a convenient shorthand to describe the concept of an agency proceeding in which individual rights are decided based on a record. As we discuss below, general legal and constitutional principles require that such proceedings be conducted substantially in the manner prescribed for most state agencies by the APA.

ORS 656.340(1)(a) provides:

"The insurer or self-insured employer shall cause vocational assistance to be provided to an injured worker who is eligible for assistance in returning to work."

Subsection (6) of the same statute provides:

"(a) A worker is eligible for vocational assistance if the worker will not be able to return to the previous employment or to any other available and suitable employment with the employer at the time of injury, and the worker has a substantial handicap to employment.

"(b) As used in this subsection:

"(A) A 'substantial handicap to employment' exists when the worker, because of the injury, lacks the necessary physical capacities, knowledge, skills and abilities to be employed in suitable employment.

"(B) 'Suitable employment' means:

"(i) Employment of the kind for which the worker has the necessary physical capacity, knowledge, skills and abilities;

"(ii) Employment that is located where the worker customarily worked or is within reasonable commuting distance of the worker's residence; and

"(iii) Employment that produces a wage within 20 percent of that currently being paid for employment which was the worker's regular employment."

Subsection (7) then provides:

"Vocational evaluation, help in directly obtaining employment and training shall be available under conditions prescribed by the director. The director may establish other conditions for providing vocational assistance, including those relating to the worker's availability for assistance, participation in previous assistance programs connected with the same claim and the nature and extent of assistance that may be provided. Such conditions shall give preference to direct employment assistance over training."

In sum, granting or denying vocational assistance is an individual decision that depends on the facts of each individual case.

The director claimed that a "condition" that he had prescribed pursuant to his rule-making authority makes claimant ineligible. OAR 436-120-050 states in part:

"The eligibility of a worker for vocational assistance ends when * * *

"(3) The worker's suitable employment after the injury or aggravation ended for a reason unrelated to the injury * * *."

It is clear that claimant is eligible for consideration for vocational assistance if he left employment based on the facts found by the referee. It is equally clear that the foregoing rule of the director would end his eligibility if he left for a reason not related to his injuries, *i.e.*, if the director's conclusions are applied.

In this case, a general rule or policy is being applied to a specific individual interest in eligibility. That being true, our cases require a more substantial hearing and decisional process, a process with which the director's procedure did not comply but the referee's hearing did.[4]

Describing attributes of the procedure required, the court in *Fasano v. Washington Co. Comm.*, 264 Or 574, 588, 507 P2d 23 (1973), stated:

"Parties at the hearing before the county governing body are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte contacts concerning the question at issue—and to a record made and *adequate findings executed*." (Emphasis added.)

This court held in *Fasano*, that "[t]he record now before us is insufficient to ascertain whether there was a justifiable basis for the decision. The only evidence in the record, that of the staff report * * *, is too conclusory and superficial to support the [decision]." *Id.* at 588.[5]

In *Neuberger v. City of Portland*, 288 Or 155, 161, 603 P2d 771 (1980), this court discussed when fuller procedures are required, stating that, "when a particular action

---

[4] Our ruling in this regard follows the procedure actually used in this case. A different result would have been obtained had the director conducted a contested case hearing, made a record, and entered findings of fact thereon.

[5] Similarly, in *de St. Germain v. Employment Division*, 74 Or App 484, 489, 703 P2d 986 (1985), the Court of Appeals stated: "Oregon's appellate courts have long held that an administrative agency decision must clearly and precisely state what it finds to be the facts and why those facts rationally lead to the decision it makes."

by * * * government is directed at a relatively small number of identifiable persons, and when that action also involves the application of existing policy to a specific factual setting, the requirement of quasi-judicial procedures has been implied from the governing law."

The treatise authorities agree. *See* 3 Davis, Administrative Law 20, § 14.4 (2d ed 1980) ("[t]he generalization is a safe one that * * * a dispute about adjudicative facts should almost always be resolved by trial procedure"). In adjudicative hearings, unlike in legislative policy-making hearings, the agency usually must rely on the factual record from the hearing, and *ex parte* contacts are forbidden. 1 Pike & Fischer, Administrative Law §§ 500-40, at Hear-5 (3d ed 1989). There was no real "hearing" at all before the director, much less a quasi-judicial one.

Another deficiency of the director's decision on review, disqualifying it from use as a final determination of fact, is the absence of a *reviewable record*. Such a record is required. *See, e.g., Doherty v. Oregon Water Resources Director*, 308 Or 543, 547, 783 P2d 519 (1989) (agency order must adequately explain how agency applied criteria set out in applicable statute by pointing to facts that permit it to make findings and the conclusions it draws from them; findings also must be adequate for meaningful judicial review); *Diack v. City of Portland*, 306 Or 287, 301, 759 P2d 1070 (1988) (Water Resources Commission did not explain adequately how it applied statutory criteria; remand necessary so that Commission may more fully explain and "point[] to the facts that it believes (if it still does) permit it to make the 'ultimate' findings and the conclusions it draws from them"); *Benton County v. Friends of Benton County*, 294 Or 79, 88-89, 653 P2d 1249 (1982) ("A quasijudicial proceeding, on the other hand, implies that the decision involves application of preexisting criteria or the determination of particular facts or both, and that some persons are entitled to be heard before a decision is reached").

The requirement of a record in adjudicative hearings also is emphasized in ORS 183.415(10), which provides that, in contested cases under the Oregon Administrative Procedures Act (APA),

"[t]he officer presiding at the hearing shall insure that the record developed at the hearing shows a full and fair inquiry

into the facts necessary for consideration of all issues properly before the presiding officer in the case.''

While not directly applicable to this proceeding because of the limitation in ORS 183.315, it is apparent that the requirement of a record in the APA is nothing more than a codification of the more general principle found in our case law.[6]

In summary, use of the director's decision in the manner approved by both the Board and the Court of Appeals flies in the face of traditional and well-understood procedures long made applicable to contested cases in Oregon. By contrast, use of the findings of fact and record made by the referee fully comports with all of the same procedures. We are unwilling to assume that the legislature would make such a departure from normal practice in this area, and invite the kind of constitutional litigation that such a departure virtually would ensure, without very clear indications that it intended to do so. As noted, there are no such indications. Accordingly, we construe the provisions of ORS 656.283 at issue here to contemplate the following process: The director informally investigates and issues an order; the referee conducts a hearing at which the parties develop a record; on the basis of that record, the referee finds the facts from which to conclude whether, among other things, the director's decision survives review; the Board reviews under ORS 656.283(2) upon the record developed before the referee. The contrary conclusion of the Board and of the Court of Appeals was error.[7]

The decision of the Court of Appeals is reversed. The orders of the Workers' Compensation Board are vacated, and the case is remanded to the Workers' Compensation Board for further proceedings.

---

[6] The generally accepted rule relating to judicial reviewability of administrative actions, in the absence of an express exclusion of such review, also is to that effect under federal law. *See Lincoln v. Virgil*, 508 US ___, 113 S Ct 2024, 124 L Ed 2d 101, 111 (1993) (stating that proposition).

[7] Because of the manner of our decision on the first petition for judicial review, we do not reach the second petition. Claimant filed two petitions for judicial review in the Court of Appeals. The second petition raised issues concerning claimant's entitlement to temporary payments pending a judicial review. Our decision also returns that related and consolidated petition to the Board for further proceedings.