Argued and submitted June 30, 1998; resubmitted En Banc February 3, reversed and remanded March 17, 1999

# STATE OF OREGON,
*Appellant,*

*v.*

# HECTOR VASQUEZ-HERNANDEZ,
*Respondent.*

## (94C-20467; CA A95499)

977 P2d 400

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Diane L. Alessi, Chief Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Deits, Chief Judge, and Edmonds, De Muniz, Landau, Haselton, Armstrong, Wollheim, Brewer, Judges, and Warren, Senior Judge.

EDMONDS, J.

Warren, S. J., dissenting.

## EDMONDS, J.

The state appeals the trial court's judgment dismissing this case under ORS 135.755 after the jury had found defendant guilty of attempted aggravated murder and related offenses. The state also challenges the court's previous order granting defendant a new trial. ORS 136.535. We hold that the order granting a new trial is not reviewable on appeal. However, we conclude that the trial court abused its discretion in dismissing the indictment against defendant, and therefore, we reverse.

Defendant was indicted in 1994 for attempted aggravated murder and other related charges arising out of allegations that he had attempted to kill two police officers. After a jury trial, defendant was found guilty on all charges. He subsequently filed a motion to dismiss the indictment under ORS 135.755 and a motion for a new trial. When the trial court granted his motion to dismiss, the state filed a mandamus action with the Supreme Court challenging the dismissal. In that case, *State ex rel Penn v. Norblad*, 323 Or 464, 918 P2d 426 (1996), the Supreme Court directed the defendant judge to vacate the judgment of dismissal, to sentence defendant and to enter judgment on the convictions. 323 Or at 471.

■ In its opinion, the Supreme Court explained:

"Realtor Dale W. Penn, the District Attorney for Marion County, seeks a writ of mandamus to compel defendant, a circuit court judge, to (a) vacate a post-verdict judgment of dismissal in the case of *State v. Vasquez-Hernandez*, Marion County Circuit Court Case No. 94C-20467; (b) sentence Vasquez-Hernandez; and (c) enter judgment on the convictions obtained in that case. * * *

"In the underlying criminal case, Vasquez-Hernandez was charged with two counts of attempted aggravated murder, two counts of attempted first degree assault, and three counts of unlawful use of a weapon, for aiming a loaded gun at two Salem police officers. A jury convicted him of all seven counts. After the jury returned the verdict, Vasquez-Hernandez filed two motions. The first sought a new trial, and the second moved to dismiss the case on the ground that Vasquez-Hernandez 'did not receive a fair trial and

was not afforded due process and it would be in the interest of justice if the matter were dismissed at this time.'

"Defendant judge concluded that the court had 'a duty to [Vasquez-Hernandez] to order a new trial but that instead the court should go further under ORS 135[.755] and dismiss the case in furtherance of justice.' Defendant judge gave two reasons. First, he concluded that he had erred in denying Vasquez-Hernandez's pretrial motion to suppress a statement made to police. Vasquez-Hernandez had argued therein that his arraignment had been delayed improperly and that his statement was the fruit of that unlawful delay. Second, defendant judge concluded that Vasquez-Hernandez had been deprived of a fair trial, because it had not received materials developed by the Salem City Attorney's office during its civil investigation of the incident. After issuing a letter opinion and 'Findings of Fact' describing his reasons, defendant judge entered a judgment of dismissal.

"* * * * *

"As noted, defendant judge purported to act under the authority of ORS 135.755. He likewise asserts to us that the statute authorizes his actions. We therefore must determine whether ORS 135.755 authorizes a court to dismiss a case after the return of a valid jury verdict. * * * Our task is to discern the legislature's intent when it enacted that statute.

"* * * * *

"After examining both text and context, we conclude that ORS 135.755 is a procedural statute that grants authority to trial judges to act pursuant to it only before trial. Defendant judge lacked authority to dismiss *State v. Vasquez-Hernandez* after receiving a valid jury verdict." 323 Or at 466-67, 471. (Footnotes and citations omitted.)

After the writ of mandamus issued, the defendant judge sentenced defendant and entered judgment. Defendant then renewed his motion for a new trial, which the trial court granted. It then ruled *sua sponte* that, because the case was then in a pretrial posture as a result of its grant of a new trial, it had the authority under ORS 135.755 to dismiss the case. The trial court incorporated by reference its earlier opinion:

"1.   This matter was initiated with the shooting of the Defendant by the Salem Police Department. It was uncontroverted that the Defendant was a member of this community in good standing with no significant criminal history. In the past he had a drinking problem but he had gotten married and the Defendant's wife put her foot down and the Defendant had not drank in a year and a half. The drinking that night was not a part of any course of continuing conduct but was a misstep on the part of the Defendant. The Defendant drank with a friend of his in his house, decided to show his friend his guns, further decided to take them outside and fire them in the air. The Salem Police were called by neighbors and when they arrived, the Defendant again came out and fired the gun in the air and lowered the gun to somewhere between 0 and 45 degrees or according to one police officer, pointed the shotgun at him and at that point the Salem Police Officer shot him. The Defendant was placed under arrest and then taken to the Salem Hospital and at the hospital he was placed under guard. He remained at the hospital for approximately two and one half days until he was well enough that the police officers arrived and took a statement from him. Later, believed to be on 29 March 1994, he was taken to the Marion County Jail after recovering somewhat from his wounds and was arraigned on 31 March 1994.

"2.   Prior to this arraignment on 31 March 1994, the Defendant had no contact with an attorney or with a Court. During that period of approximately nine days, the Defendant was not informed of the fact that he was arrested or what the charges were, in violation of ORS 133.235. The Defendant was not arraigned within 48 hours of his arrest as required by *County of Riverside v. McLaughlin,* [500 US 44, 111 S Ct 1661, 114 L Ed 2d 49 (1991)]. The Defendant was not arraigned within 36 hours as required by ORS 135.010. The Defendant was not advised of his right to counsel and since he was indigent, was not provided counsel as required by ORS 135.070. Because there was no preliminary hearing, the Defendant was not given his right to make a statement as required by ORS 135.100. Also because of this, the Defendant was not given a right to provide this statement to the Grand Jury as required by ORS 135.105.

"3.   Approximately two and a half days after the arrest, the police officers came to his room and took a statement.

By this time, the Defendant should have been arraigned, either under the Oregon Statutes or the *Riverside* case and advised of and appointed an attorney. Therefore, the statement was inadmissible and this Court should not have allowed its introduction into this trial.

"4. After the appointment of counsel, counsel made requests for discovery on the 4th and 19th of April 1994, 6 May 1994, 26 June 1994 and the 7th and 13th of July 1994. The District Attorney's office provided the Defense Attorney all the information they had, but there was further information that was retained either by the Salem Police Department or by the City Attorney's Office. The City Attorney had a Salem Police Officer, Officer Driscoll, do an investigation which was part of and ran parallel to the other investigation. The officer did this investigation while carrying a gun and a badge and at times was in uniform. During this investigation this officer took certain statements from the Defendant's wife, other people and made a video of the scene. Whatever this officer did, was not released by the City Police or by the City Attorney's office to the District Attorney or to the Defense Attorney. Some of this information was provided to Officer Hayes, the principal officer involved in the shooting, prior to him giving his statement. The City Attorney testified outside the jury that it was his view these matters were covered by attorney/client privilege and that he would not release this information and in fact, to the absolute amazement of the Court, the Assistant City Attorney testified that if he obtained any evidence exculpatory to the Defendant, he would not release this to the District Attorney or the Defendant. The Court finds that ORS 135.815, the disclosure statute, was violated and in turn ORS 135.825, was violated in that information was not provided the Defendant about a search of his house. The Court feels that this must be provided even though consent was granted by his wife.

"5. The Court finds after listening to the testimony that the primary purpose of all of the investigation was to protect the City of Salem from civil suit as opposed to determining the guilt or innocence of the Defendant.

"The two officers that were involved in the shooting, immediately after the shooting, were advised of their Miranda Rights and in fact exercised their rights to an attorney and did not give a statement involving this criminal investigation until two and a half days later after they had talked

to an attorney and the attorney was present. These Miranda Rights were given to the police officers when they were not a focal suspect or they were not in custody. The Court finds that if a private citizen were involved in this shooting, Miranda Rights would not be given. Further the City of Salem paid up to $500.00 to provide a private attorney for the police officers involved in the shooting so that any statements they made which could be used in court against this Defendant were first checked out by their private attorney, paid for by taxpayers. Again, if any citizen was involved in a shooting wherein that citizen fired shots in self defense, the City of Salem certainly would not spend $500.00 to provide them with an attorney. Further the officers testified that they were concerned about their personal liability. The Court finds that this has no credibility. If, in fact, there was a shooting and it was not done in a criminally lawful manner and if the officers are sued individually under 1983 or some other statute, the City of Salem will pay the judgment and save the officers harmless.

"6.    The Court finds that the Marion County District Attorney's Office and, specifically, Deputy District Attorney Steven Dingle, acted honestly and honorably throughout the proceedings and none of the errors of the Salem Police Department can be imputed to them.

"Based upon the foregoing Findings of Fact and other considerations of the Court, more fully enumerated in a letter opinion to counsel dated May 1, 1995, which is attached hereto and incorporated into this Order:

"1.    The Court finds it has a duty to Defendant to order a new trial.

"2.    However, the Court further finds that it should go further under ORS 135.755 and dismiss the case in furtherance of justice."

We first consider whether the state may challenge the grant of defendant's motion for a new trial on appeal. In *State v. Caruso*, 289 Or 315, 613 P2d 752 (1980), the Supreme Court held that ORS 138.060 contains an exclusive list of orders that the state may appeal. An order granting a motion for a new trial is not among those orders.[1]

---

[1] ORS 138.060 provides, in pertinent part:

"The state may take an appeal from the circuit court to the Court of Appeals from:

The state recognizes that the holding in *Caruso* casts doubt on its ability to challenge the order for a new trial in this case. It argues, however, that that order and the subsequent judgment dismissing the case under ORS 135.755 are parts of a "unitary whole" and are subject to appellate review, relying on our holding in *State v. Martinez*, 97 Or App 170, 776 P2d 3 (1989). In *Martinez*, the trial court, pursuant to OEC 510(4)(b), concluded after an *in camera* hearing that there was a reasonable probability that a confidential informant could give testimony necessary to a fair determination of the defendant's guilt or innocence. However, the state refused to disclose the informant's identity. As the statute provides, the court then dismissed the case on its own motion because of the state's refusal. In holding that we could review the merits of the trial court's decision, we distinguished *Caruso* on the ground that OEC 510(4)(b) treats disclosure and dismissal as a "unitary whole." Dismissal under OEC 510(4)(b) is the legislatively mandated consequence of the state's refusal to disclose. Thus, a dismissal under the rule cannot be separated from the order requiring disclosure, and both are reviewable on appeal.

In contrast, the decision in this case to dismiss under ORS 135.755 is not part of the decision to grant defendant's motion for a new trial under ORS 136.535. The granting of a new trial did not automatically lead to the dismissal of the indictment. Although the trial court relied on some of the same considerations in making each decision, the rulings were independent of each other. We conclude that, because ORS 138.060 does not authorize the state to appeal from an

---

"(1) An order made prior to trial dismissing or setting aside the accusatory instrument;

"(2) An order arresting the judgment;

"(3) An order made prior to trial suppressing evidence;

"(4) An order made prior to trial for the return or restoration of things seized;

"(5) A judgment of conviction based on the sentence as provided in ORS 138.222; or

"(6) An order in a probation revocation hearing finding that a defendant who was sentenced to probation under ORS 137.712 has not violated a condition of probation by committing a new crime."

order granting a motion for a new trial, the trial court's order in that regard is not reviewable.

■ ■  We turn to the judgment of dismissal under ORS 135.755.[2] ORS 135.755 provides:

> "The court may, either of its own motion or upon the application of the district attorney, and in furtherance of justice, order the proceedings to be dismissed. The reasons for the dismissal shall be set forth in the order, which shall be entered in the register."

We review a trial court's decision to dismiss a case under ORS 135.755 for an abuse of discretion. However, the trial court's discretion under the statute is not absolute; it is to be applied within the bounds of legal principle to effectuate the intent of the legislature. An abuse of discretion occurs when a court exceeds the rules of law that circumscribe its authority.

In *State v. Stough,* 148 Or App 353, 356, 939 P2d 652, *rev den* 326 Or 58 (1997), we held that the dismissal of a drug charge against the defendant was not authorized, even though he was a Vietnam veteran whose drug dependence had occurred during the war and he was charged with possessing only a small amount of heroin. In this case, the trial court cited as one factor in support of its decision that defendant "was a member of this community in good standing with no significant criminal history," and that although he had had a drinking problem, what occurred on the night of his arrest "was not a part of any course of continuing conduct but was a misstep on the part of [d]efendant." Although a first offense could be a factor to consider under ORS 135.755, there is no suggestion in the statute or its legislative history that the legislature contemplated that "justice" would be furthered if citizens of good standing are entitled to a dismissal because it is their first offense. *See Norblad,* 323 Or at 467-68 (tracing the history of the statute). In *Stough,* we said that "the circuit court is not authorized to act as a policymaker" on

---

[2] In *State ex rel Penn v. Norblad,* the court held that ORS 135.755 grants authority to trial judges to act pursuant to it only "before" trial. 323 Or at 471. For purposes of this opinion, we assume without deciding that the trial court had the authority under that holding to dismiss the case under ORS 135.755, even though the case had already been tried once.

who should be prosecuted. 148 Or App at 357. That statement is applicable here if defendant's standing in the community is relied on under the circumstances of this case as the sole ground for dismissal.

The trial court did rely on additional grounds in support of its ruling. It found that defendant was not arraigned in a timely fashion and that approximately two and half days after his arrest, the police took a statement from him before his arraignment had occurred and counsel had been appointed to represent him. Before the initial trial, defendant moved to suppress his statement to the police. The trial court initially denied defendant's motion. However, in its decision to dismiss the charges against defendant, it opined that it should have granted the motion to suppress and that its failure to have done so was a ground that justified dismissal.

■      It is questionable whether the violation of either the statutory or the constitutional requirement of a timely arraignment merits suppression of defendant's statement in light of the facts that defendant was given *Miranda* warnings before he made the statement and the trial court did not find that the statement was involuntary. *See State v. Shipley*, 232 Or 354, 375 P2d 237 (1962), *cert den* 371 US 811 (1963) (holding that the failure to be timely arraigned did not result in defendant's voluntary confession being inadmissible for evidentiary purposes). Regardless, even if the trial court is correct that it should have allowed defendant's motion to exclude the evidence of his statement on constitutional or statutory grounds, suppression of the evidence was the proper remedy rather than dismissal under ORS 135.755. Moreover, defendant took the witness stand during the initial trial and testified, consistent with his prearraignment statement to the police, that he had no recollection of pointing a gun at the police officers. *See State ex rel Juv. Dept. v. Cook*, 325 Or 1, 4-5, 932 P2d 547 (1997) (holding that no error occurred when the defendant youth's choice to testify at trial eliminated the possibility that the court's earlier ruling on a motion to suppress harmed him).

■      Finally, the trial court focused its findings on the failure of the City of Salem to provide discovery to defendant or

the district attorney.[3] The court determined that the city's conduct violated ORS 135.815 and ORS 135.825, which require the state to furnish discovery of the results of its investigation to defendants that it prosecutes. Assuming without deciding that the city was guilty of discovery violations under the statutes, it is error for a trial court to impose the sanction of dismissal for discovery violations under ORS 135.865 when a lesser sanction will suffice. *State v. Mai,* 294 Or 269, 277, 656 P2d 315 (1982); *State v. Dyson,* 52 Or App 833, 629 P2d 887, *rev'd on other grounds* 292 Or 26, 636 P2d 961 (1981). Here, the part of the investigation of which the city refused to furnish discovery consisted of a taped statement taken from defendant's wife on the day of the arrest, two videotapes of the scene, a diagram of the scene and a memorandum. At the initial trial, defendant called the assistant city attorney who had supervised the city's civil investigation. He did not serve a subpoena *duces tecum* on the witness, nor did he request that the trial court order the attorney to produce his files or for an *in camera* inspection by the court. Under the discovery statute, the trial court was required to exhaust the availability of other less severe sanctions for discovery violations and/or its other powers, such as contempt, before imposing the ultimate sanction of dismissal.

---

[3] Apparently, the city refused to furnish the discovery because it was concerned about its civil liability. The city's refusal appears to have raised the trial court's ire in particular, and it undertook to correct what it believed to be an improper policy decision by the city. In a letter opinion, the trial court said, in part:

"this Court is not [un]mindful of the fact that at some juncture it has a duty to send a message to law enforcement that they need to follow the arraignment procedures, they need to follow the appointment of counsel procedures, preliminary hearing procedures and discovery procedures. This Judge has been on the bench since 1973 and prior to that a prosecutor and defense attorney and has handled numerous criminal cases. A substantial percentage of those cases have involved the City of Salem Police Department and I can honestly say, I have never in my life seen a case, such as this, where so many of the defendant's rights were violated. The only conclusion this Court can come to is that [c]ity liability was more important than protecting the Defendant's statutory and constitutional rights."

The trial court and the dissent equate the city's obligation to furnish discovery under ORS 135.815 with that of the State of Oregon. In fact, the statute provides that

"the district attorney shall disclose to the defendant the following material and information within the possession or control of the district attorney."

For purposes of this case, we need not decide the scope of the city's obligation to furnish discovery under the statute.

Although the trial court exercised its authority to sanction under ORS 135.755 rather than the discovery statute, we discern no intention by the legislature that its authority under ORS 135.755 should not be circumscribed by the same policies. Otherwise, the public's interest in having crimes prosecuted for the benefit of public safety and order is frustrated. *See, e.g., State v. Shepherd*, 21 Or App 52, 55, 533 P2d 353 (1975).

In summary we hold that (1) the trial court's grant of a new trial is not reviewable, and that (2) the trial court abused its discretion when it dismissed the prosecution of this case under ORS 135.755. The trial court based its decision to dismiss on a combination of factors, as we have described. Each of those factors, by themselves or in combination are insufficient grounds for dismissal. Even if the trial court had relied solely on defendant's good standing in the community as the sole basis for relief under the statute, it would have abused its discretion. Under the circumstances of this case, we conclude for the reasons stated, that the trial court abused its discretion in dismissing the indictment under ORS 135.755 "in [the] furtherance of justice."

To the extent that the trial court believes that it erred in admitting certain evidence, it can reconsider those rulings before retrial. Similarly, the parties are entitled on remand to address any purported discovery violations. Finally, the court is entitled to consider motions made by the parties regarding the production of evidence and is entitled to exercise its authority within the confines of the controlling statutes. It is those procedures that protect defendant's statutory and constitutional rights while at the same time preserving the public's interest in having crimes prosecuted.

Reversed and remanded.

**WARREN, S. J.,** dissenting.

As the state points out in its brief, our decisions under ORS 135.755 are unusual because we nominally apply an abuse of discretion standard but, in fact, routinely reverse trial courts when they dismiss cases over the state's objection. Our apparent presumption that a dismissal is reversible presents a stark contrast to the normally deferential nature

of the abuse of discretion standard. *See, e.g.*, *State v. Stough*, 148 Or App 353, 939 P2d 652, *rev den* 326 Or 58 (1997); *State v. Sanchez*, 136 Or App 329, 901 P2d 978, *rev den* 322 Or 362 (1995); *State v. Hadsell*, 129 Or App 171, 878 P2d 444, *rev den* 320 Or 271 (1994). In this case, the trial court clearly reviewed our decisions and carefully considered the issues that we have held to be important before it decided to dismiss this case. The majority holds, nevertheless, that the court abused its discretion. The majority thereby makes express the implication that the state draws from our cases: if a trial court dismisses a case over the state's objection, then it will be reversed, no matter how carefully the court has followed our teachings. Because I cannot join in this final step in the process of negating a statute that has been part of this state's law since the Deady Code, I dissent.

ORS 135.755 grants the trial court authority to dismiss a criminal case "either of its own motion or upon the application of the district attorney, and in the furtherance of justice." In our previous cases reversing dismissals under this statute, we described criteria that a trial court is to consider when deciding whether to dismiss a case under it; we summarized the essential considerations in *Stough*. A trial court should reserve dismissal for severe situations, because dismissal frustrates the public interest in the prosecution of crimes, the protection of the public, and the rehabilitation of offenders. 148 Or App at 355. A trial court that dismisses a case in the interests of justice must articulate substantial reasons for that decision that should generally involve consideration of the defendant's substantive and procedural rights and of the public's interest in having the law enforced. In the absence of constitutional violations, the inconvenience, expense or delay caused to a defendant by the prosecution of a criminal case is insufficient to justify dismissal. *Id.* at 356.

The trial court stayed precisely within the criteria that we have established, including carefully articulating substantial reasons for its actions that derive directly from our previous decisions. In its letter opinion and subsequent findings of fact, the court gave the following reasons for dismissing this case: (1) Before the shooting, defendant was a member of the community in good standing, with no significant criminal record. Although he had previously had a

drinking problem, he had been sober for a year and a half, due in large part to his wife's influence. His drinking that night was not a course of continuing conduct but a single misstep. (2) Defendant was under arrest in the hospital for two and a half days before the officers took a statement from him. He had no contact with an attorney before he was arraigned a number of days later. During that period he was denied a number of constitutional and statutory rights, particularly the right to a speedy arraignment and the right to counsel. Because of those violations, the trial court concluded that its admission of defendant's statement at a previous trial was erroneous. (3) The city treated the case as one of potential civil liability and conducted an investigation, using a city police officer as the investigator and providing attorneys at taxpayer expense to the officers involved in the shooting before taking their statements. It then refused to provide the information that it had acquired to either the district attorney or defendant. A city attorney, indeed, testified that he would not provide any exculpatory evidence that the investigation uncovered.

In its letter opinion, the court noted that there were several issues involved in a dismissal on its own motion: "One, fundamental fairness to the Defendant; two, protection of the community; and three, fundamental fairness to the victim, the City of Salem." It then concluded the letter by explaining its reasons for dismissing the case:

"This is a Defendant who has never been in real trouble who seems to be a productive member of the community and in this Court's opinion will probably never be in trouble in the future. Second, this Court is not [un]mindful of the fact that at some juncture it has a duty to send a message to law enforcement that they [sic] need to follow the arraignment procedures, they [sic] need to follow the appointment of counsel procedures, preliminary hearing procedures and discovery procedures. This Judge has been on the bench since 1973 and prior to that a prosecutor and defense attorney and has handled numerous criminal cases. * * * I can honestly say, I have never in my life seen a case * * * where so many of the defendant's rights were violated. The only conclusion the court can come to is that City liability was more important than protecting the Defendant's statutory and constitutional rights. * * * This Defendant has spent

over one year in jail awaiting this trial[11] and the City of Salem seems to of [*sic*] violated a majority of his rights. Therefore this Court finds it only appropriate that on it's [*sic*] own motion this Court shall dismiss all charges in furtherance of justice."

The court's opinion and findings show that it considered the matters that we have identified as relevant to a decision to dismiss under ORS 135.755. Its conclusions would show that there was no need to continue the case in order to promote the rehabilitation of defendant or to protect the public from further offenses, because defendant was normally a law-abiding citizen whose actions on the evening in question were an aberration.[2] It also concluded that the city, which the court identified as the victim, was itself responsible for many of the violations of defendant's rights. The situation that the court described is different from many of the cases in which we have held that a court erred in dismissing a case, in which the courts seemed to be concerned primarily with terminating what they perceived to be poor cases, not with applying the appropriate factors under the statute. *See, e.g.*, *Stough* (defendant's status as a Vietnam veteran did not justify prosecution for possession of 0.03 grams of heroin); *Hadsell*, (weakness of state's case and inconvenience and expense to the defendant justified dismissal).

The state argues, and the majority agrees, that the defects that the trial court identified did not in fact harm defendant and that they would not require the exclusion of evidence. The statement that defendant gave the police in the hospital was consistent with his trial testimony, while the information that the city acquired during its investigation was also consistent with the evidence at trial.[3] While the

---

[1] When the trial court later sentenced defendant pursuant to the Supreme Court's mandate, it imposed a sentence of 13 months' imprisonment, which was approximately equal to the time that defendant had already spent in jail waiting trial.

[2] Although the majority compares this statement to the action of the trial court in *Stough*, there are essential differences. In *Stough*, the trial court essentially exercised leniency to the defendant because he was a Vietnam veteran charged with what the trial court treated as a minor offense. Here, the trial court did not exercise leniency but considered defendant's background as part of determining whether dismissing the case would be dangerous to the community, one of the criteria that our previous decisions told it to consider.

[3] After the original dismissal, the state moved for reconsideration based on an affidavit of a deputy district attorney that gave details about the city's

state admits that defendant's arraignment was untimely, it asserts that he would not have received some of the other rights that the trial court identified even if he had been timely arraigned. I agree that those are things that the *trial* court could properly weigh in deciding whether to dismiss the case. They do not, however, decide the issue before *us*.

The state and the majority simply overlook the essential foundation for the trial court's decision: its conclusion that the city's primary goal was to protect itself from civil liability and that it ran roughshod over defendant's rights in order to achieve that goal. Even assuming that none of the constitutional or statutory violations that the trial court identified would require exclusion of evidence, the city's purposes and actions are still relevant to the court's exercise of its discretion under ORS 135.755. The purpose of that statute is not to enforce a defendant's rights at trial but to allow the court to act in the interests of justice. Those interests can include making clear the court's unwillingness to tolerate a conscious and intentional violation of a defendant's essential pretrial rights, particularly when the city itself was both the victim of defendant's alleged crime and the violator of his rights.

The trial court carefully evaluated the situation as a whole, including the factors that we have identified in previous cases, before it decided to dismiss the case. I cannot say that it abused its discretion in doing so and would therefore affirm its decision.

I dissent.

Armstrong and Wollheim, JJ., join in this dissent.

---

investigation. Although the trial court denied the motion for reconsideration, the information in the supporting affidavit was part of the record when the trial court again dismissed the case after the Supreme Court's ruling.