Argued and submitted March 29, affirmed November 3, 1999

# LIBERTY NORTHWEST INSURANCE CORPORATION
## and Wilson Construction Co.,
### *Petitioners,*

*v.*

## Gary Joe JACOBSON
## and Department of Consumer and Business Services,
### *Respondents.*

## (H97-113; CA A101800)

988 P2d 442

Darren W. Lee argued the cause and filed the briefs for petitioners.

Julie Point argued the cause and filed the brief for respondent Gary Joe Jacobson.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Department of Consumer and Business Services.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

■     Employer petitions for judicial review of a final order of the director of the Department of Consumer and Business Services (DCBS) ordering that claimant is entitled to additional vocational training. On review, employer contends that the director applied an incorrect standard for her review and that some of her findings are not supported by substantial evidence. We review the director's final order "only for errors of law and substantial evidence." *Lasley v. Ontario Rendering*, 114 Or App 543, 547, 836 P2d 184 (1992). *See also* ORS 656.283(2)(d) (judicial review of the director's order "shall be pursuant to ORS 183.310 to 183.550"). We affirm.

We take the following facts from the director's final order, later addressing employer's disagreements with some of the director's factual findings. Claimant, who was a journeyman electrical lineman, suffered a compensable back injury in July 1994. Eventually, following a series of hearings before and orders by DCBS, the claim was closed and claimant was awarded seven percent unscheduled permanent partial disability. Employer initially determined claimant to be ineligible for vocational assistance. Claimant, in response, sought DCBS review, which led to an order by the director that claimant was entitled to vocational assistance. Pursuant to that order, employer's insurer arranged for claimant to receive vocational training.

With regard to the vocational training that claimant received, the director found:

"Liberty [the insurer] assigned claimant's vocational training to Barbara Kronsteiner. Claimant and Ms. Kronsteiner agreed on a training goal of cost estimator. The program included training at the VoTech institution, which primarily offers construction training. Claimant's agreement on the training goal was a result of a representation by Ms. Kronsteiner that the training would help him return to the electrical field. She also represented that claimant would receive Auto CAD [computer assisted design] training. The materials provided by VoTech represented that the cost estimator training would include CAD training. [Claimant] did not receive the course outline until after he agreed with the vocational goal of cost estimator.

"Claimant began the training program September 3, 1996. Shortly thereafter, he began corresponding with Ms. Kronsteiner regarding his concerns about the VoTech program. On October 29, 1996, claimant indicated he was concerned about the pace of the program. On November 22, 1996, claimant indicated he didn't understand how the VoTech program would assist him in seeking employment in the electrical field. Ms. Kronsteiner told claimant to trust the program. In addition, she made one telephone call to an instructor regarding the pace of the course. She did not respond to claimant's comment about the lack of training for careers in the electrical field.

"Ms. Kronsteiner met with claimant on December 30, 1996. He again expressed his dissatisfaction with the training he received because he did not receive CAD training. Claimant finished the VoTech training on January 29, 1997.

"Thereafter, claimant applied for a position as an Engineering Technician with Northern Wasco County. He did not get the position because he was inadequately trained.

"Claimant requested a director's review because he believed the training was inadequate and did not prepare him to work in the electrical field. RRU [the rehabilitation review unit, which first reviewed this case for the Director] determined claimant's training was adequate and, therefore, he was not eligible for additional vocational assistance.

"Thereafter, claimant worked for a short period of time for Shari Services Inc., which is owned by Pat Ryan. The job was the result of contact by Ms. Kronsteiner. Claimant qualified as a preferred worker and the business received wage subsidies. Although hired to read blue prints, 25% to 33% of the time claimant acted as a receptionist. Paychecks were late and there was some question whether there were illegal activities. When claimant expressed concerns about the suitability of the job, Ms. Kronsteiner encouraged claimant to keep the job because she said it would be easier to get a job when he was working. Ms. Kronsteiner made no effort to determine whether claimant's concerns about the company were legitimate. Claimant left that employment after a dispute with Mr. Ryan."

(Record citations omitted.) The director concluded her findings with a finding that "[w]ithout the representations of Ms. Kronsteiner and VoTech, claimant would not have agreed with the training goal of cost estimator."

In challenging the director's order, employer first argues that the director failed to adhere to the pertinent standard of review, which is review for abuse of discretion. ORS 656.283(2)(c)(D). More specifically, employer urges that the director conducted a form of *de novo* review by "impermissibly substitut[ing] her judgment for that of the RRU."

A description of the statutory process for reviewing vocational assistance decisions, and of the administrative proceedings that underlie this appeal, aids in framing the issue. Under ORS 656.283(2)(b), if a worker is dissatisfied with an insurer's or employer's action regarding vocational assistance, then the worker may apply to the director for administrative review of the action. If the parties cannot resolve the dispute by agreement, then the director does so by way of a written order containing findings of fact and conclusions of law. *Id.* The director's order must be based on a record sufficient to permit further administrative review under the contested case hearing provisions in ORS 656.283(2)(c). *Id.* At that initial stage of review, the director is not obligated to hold a hearing. *See Lasley,* 114 Or App at 546 (so holding under an earlier but parallel version of the statute). A contested case hearing is available, however, if either party chooses to challenge the director's order. *See* ORS 656.283(2)(c).

Although review of the director's administrative order formerly was performed by an independent hearings officer, whose order in turn was subject to review by the Workers' Compensation Board,[1] the order now is subject to review "only by the director." ORS 656.283(2)(c). As under the former procedure, a contested case hearing is held by a hearings officer, who develops a factual record. *See generally Lasley,* 114 Or App at 547 (describing the contested case hearing). The grounds for modification of the director's prior

---

[1] *See generally Colclasure v. Wash. County School Dist. No. 48-J,* 317 Or 526, 537, 857 P2d 126 (1993), and *Lasley,* 114 Or App at 545-47, describing the former review procedures.

order are limited, however, notwithstanding that it is the director herself who is responsible for the review:

> "At the contested case hearing [which is then held], the decision of the director's administrative review shall be modified only if it:
>
> "(A)  Violates a statute or rule;
>
> "(B)  Exceeds the statutory authority of the agency;
>
> "(C)  Was made upon unlawful procedure; or
>
> "(D)  Was characterized by abuse of discretion or clearly unwarranted exercise of discretion."

ORS 656.283(2)(c).

Summarized, then, disputes regarding the provision of vocational assistance first go through a less formal "administrative" review that does not include a contested case hearing, but that results in a written order complete with findings of fact and legal conclusions. If that initial order is challenged, then a contested case hearing is held. At that hearing, additional evidence may be adduced and additional findings of fact may be made. *Colclasure v. Wash. County School Dist. No. 48-J,* 317 Or 526, 537, 857 P2d 126 (1993). On review of her own initial "administrative review" decision, however, the director may modify the decision only for a limited number of reasons, including, as pertinent here, because of an abuse of discretion at the initial administrative review stage. ORS 656.283(2)(c). *See also Lasley,* 114 Or App at 546.

In this case, claimant objected to employer's decision that he needs no additional vocational assistance. The director delegated to the Rehabilitation Review Unit (RRU) the responsibility for conducting the initial review of the matter and for issuing the initial written decision. After conducting a review, an RRU worker, as the director's designate, determined that claimant was not entitled to any more vocational assistance. Claimant sought review of that decision. In response, a hearings judge held a contested case hearing and issued a proposed final order, reaching the opposite conclusion. The director then issued a final order, which adopted the findings of fact made by the hearings judge.

In her final order, the director concluded that the initial RRU order represented an abuse of discretion because the RRU had not investigated whether the VoTech training program was misrepresented to claimant, as he contended. The director reasoned that "vocational assistance providers" are required to provide accurate, truthful information to claimants. Here, the director found that "there is a dispute over the representations made by Ms. Kronsteiner to the claimant regarding the claimant's career goal." The director resolved that dispute, deciding that in fact the program had been misrepresented to claimant and that claimant was entitled to additional vocational assistance due to the misrepresentations. The director reasoned:

"The record is replete in the fact the claimant thought he would receive Auto CAD training and that he was properly being prepared for a career in the electrical field. That testimony is corroborated by Ms. Kronsteiner and another of her clients.

"Claimant agreed to a training program with a goal of cost estimator under the good faith belief that this would qualify him for a job in the electrical field. Nevertheless, the title of cost estimator is generic and can apply differently depending on the area of expertise. However, Ms. Kronsteiner made a number of statements which led the claimant to believe the training would be geared toward helping him re-enter the electrical field.

"Claimant testified that Ms. Kronsteiner assured him that the VoTech program would include Auto CAD. Ms. Kronsteiner denied making that representation, but she also denied making the same promise to Mr. Kenyon [another vocational assistance client]. Both the claimant and Mr. Kenyon credibly testified that Ms. Kronsteiner represented that Auto CAD would be included in the VoTech training. The VoTech catalog also referred to available Auto CAD training. Therefore, based on Ms. Kronsteiner's representations and the material provided by VoTech, I agree with [the hearings judge] that the misrepresentations constitute a violation of OAR 436-120-0520(2) * * * [and] the spirit of the law as stated in ORS 656.283(2)(a).

"* * * * *

"After considering the VoTech materials and listening to the various witnesses, [the hearings judge] determined that the VoTech program is structured to prepare individuals to work in the construction, not the electrical, field. When claimant applied for an electrical position, he was not hired because he was insufficiently trained. Therefore, the training program was inadequate to prepare claimant to work in the electrical field. Liberty [the insurer] is required to provide additional vocational assistance * * *.

"[The hearings judge] also addressed the contention of Liberty that claimant's vocational eligibility should be terminated because the job [claimant obtained] at Shari Services constituted suitable employment. The record tends to establish the opposite since there were concerns about late payment of wages and the allegation that Shari might be using illegal practices. Therefore, Liberty failed to prove that job constituted suitable employment."

(Record citations omitted.)

■    In arguing that the director did not adhere to an abuse-of-discretion standard of review, employer's point is narrow. Employer does not dispute the director's conclusion that the vocational counselor's misrepresentations can constitute a violation of a vocational assistance provider's duty to provide reasonably accurate information. *See generally* OAR 436-120-0520(2).[2] Nor does employer dispute that the violation of the provider's duty in that regard could render the vocational assistance provided unsuitable or inadequate. Employer argues only that the director, while invoking an abuse-of-discretion standard of review, in fact substituted her judgment for that of the RRU. Employer insists that an "abuse of discretion" exists only when discretion is exercised "to an end or purpose not justified by, and clearly against, reason and evidence." *E.g.*, *Casciato v. OLCC*, 181 Or 707, 717, 185 P2d 246 (1947). In employer's view, the director's rationale for modifying the RRU's order does not fit that test and therefore necessarily reflects a mere disagreement with the RRU's judgment rather than a determination that the RRU abused its discretion. We disagree, both with

---

[2] The rule, on which the director relied in her order, requires vocational assistance providers during plan development to provide workers with the information to help them analyze and evaluate options.

employer's restrictive view of the standard of review and its characterization of the director's order.

■ In both judicial trials and administrative hearings, many decisions covering a wide range of matters, both substantive and procedural, are committed to the "discretion" of the judge or other official presiding over the adjudication. Discretion, in that context, describes the decision-maker's power to choose among several courses of action, any one of which is legally permissible. *State v. Caruso*, 289 Or 315, 322, 613 P2d 752 (1980); *State ex rel Maizels v. Juba*, 254 Or 323, 330, 460 P2d 850 (1969). "Abuse of discretion" is the familiar standard of review for such decisions. As a standard, however, it is relatively without content, for it describes the conclusion to be reached, not the analysis used to reach it. The essential question is whether the choice made is consistent with one or several objectives to be served by vesting discretion in the decision maker, under circumstances pertinent to the decision to be made. *See generally Dickenson v. Davis*, 277 Or 665, 673-76, 561 P2d 1019 (1977) (discussing the nature of discretion in administrative proceedings).

Thus, as the Oregon Supreme Court has cautioned, the phrase "abuse of discretion" has no hard and fast meaning. *Far West Landscaping, Inc. v. Modern Merchandising, Inc.*, 287 Or 653, 664, 601 P2d 1237 (1979). Asking whether discretion was exercised "to an end or purpose not justified by, and clearly against, reason and evidence" is a generalized way of identifying the permissible range for many types of decisions. It is not an exclusive or all-purpose test, however.[3] That standard is not particularly helpful, for example, when the purpose might in some sense be a legitimate one, but is nevertheless not among the purposes that the legislature sought to have served. *See, e.g., State v. Vasquez-Hernandez*, 159 Or App 64, 977 P2d 400 (1999) (discretion to dismiss charge must be tested against the legislature's purpose in giving a court the authority to take that action). Nor is that more generalized standard apt when a discretionary decision comports in a general way with "reason and evidence," but

---

[3] Indeed, the Oregon Supreme Court has noted that the definition of "abuse of discretion" given in *Casciato* was fashioned by the court to reflect its understanding of what a particular statute required. *Dickenson*, 277 Or at 674 n 6.

fails to reflect considerations that the legislature has specified must be accounted for in the decision. *See, e.g., McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 191-92, 957 P2d 1200 (1998) (ORS 20.075 prescribes the criteria that courts must consider in exercising discretion to grant attorney fees provided for by other statutes). Moreover, the *Casciato* standard is essentially substantive in nature, as it focuses on what decision was made and whether reason and evidence supports it. It does not address procedural concerns, such as whether the trial court's decision reflects a failure to exercise discretion or to consider all relevant circumstances in making the decision; those, too, can lead to a determination that discretion was abused. *See, e.g., Coulter Property Management, Inc. v. James*, 160 Or App 390, 394, 981 P2d 395 (1999).

In this case, the director's order focuses on the RRU's failure to consider relevant circumstances in its review and decision. Although the RRU assessed the adequacy of claimant's vocational assistance program, it did so without exploring claimant's concerns that, in agreeing to the VoTech training program, claimant did so based on misrepresentations about the kind of training he would receive. The director specifically found in her order that the RRU did not "investigate whether the training program was misrepresented to" claimant. In effect, the director determined that the RRU had no discretion to ignore that contention on claimant's part, because it was relevant to whether the insurer had met its duty to provide reasonably helpful and accurate information to assist claimant in analyzing and evaluating vocational assistance options. In that regard, the director did not substitute her judgment for that of the RRU; she exercised judgment in the first instance, because the RRU had failed to do so. We agree with the director that the RRU's failure to investigate and consider claimant's concerns about the misrepresentation of the program was an abuse of discretion.[4]

---

[4] We do not suggest that our discussion of the various formulations used to test for an abuse of discretion is a complete description of the range of review available to the director. In this particular case, the problem identified by the director—that is, the failure to investigate and consider a relevant contention in deciding the adequacy of claimant's vocational training—fits easily within the familiar abuse of discretion analyses. As described earlier, the director reviews her own (or, as in this case, her delegate's) initial decision for an abuse of discretion and for the other

■ In a single paragraph in its brief, employer more pertinently argues that the record does not support the director's conclusion that the RRU did not investigate claimant's contention that the nature of the vocational assistance program was misrepresented to him. Employer contends that the director erred because, employer asserts, the RRU in fact did conduct such an investigation. However, the only evidence in the "administrative review" record that employer cites in support of its contention is the RRU evaluator's note that she spoke with claimant, who said he was unhappy with the vocational training he received and that he had thought the training would include Auto CAD instruction. The written order prepared by the RRU does not otherwise discuss or mention claimant's contention that the nature and content of the vocational assistance program were misrepresented to him. Nor does the order suggest that the RRU evaluator further investigated claimant's complaints or provide any clue as to why the evaluator apparently discounted those complaints. Thus, although the RRU evaluator may have been generally aware of claimant's allegation of misrepresentation because she had spoken with him, the evaluator otherwise appears to have ignored and not to have investigated the claim.[5] We conclude that the director did not err in determining that the RRU did not investigate or consider—at least not adequately—claimant's assertion that VoTech misrepresented the training he would receive.

■ Employer's remaining claims are that the director erred because some of her findings of fact allegedly are not supported by substantial evidence. Specifically, employer claims that the following findings are not adequately supported by the record: (1) that claimant was led to believe that

---

enumerated legal errors. The applicable bases and standards of review appear to be an anachronistic holdover from the days when the Workers' Compensation Board reviewed the director's exercise of discretion. *See Lasley*, 114 Or App at 545-47 (describing former review process). Whether the fact that the director has ultimate responsibility for both the initial decision and the review of the decision gives her some different or broader license in reviewing for abuse of discretion is not a question we need to decide in this case.

[5] In arguing that the RRU did investigate the claim, employer also cites evidence from the record made at the contested case hearing. Because that evidence was taken after the RRU review, it does nothing to demonstrate that the RRU investigated the claim.

his vocational training would include Auto CAD instruction; (2) that he was led to believe that the goal of his vocational program was to train him for work in the electrical field; and (3) that the program was not adequate to prepare him for suitable work.[6] Employer contends that this last finding is based solely "on the fact that claimant did not receive one particular job."

■■ Our review of the director's factual findings is for substantial evidence. "Substantial evidence" supports a finding when the record, viewed as a whole, permits a reasonable person to make the finding. ORS 183.482(8)(c). In assessing whether findings are supported by substantial evidence, our task is not to substitute our judgment for that of the director, but rather to decide whether the findings are reasonable in light of countervailing as well as supporting evidence. *Reguero v. Teacher Standards and Practices*, 312 Or 402, 417-18, 822 P2d 1171 (1991).

Here, the challenged findings easily pass that test. In her order, the director cited evidence supporting her conclusions that claimant was misled to believe that he would receive Auto CAD training, that the goal of his vocational training program was to prepare him for work in the "electrical field," and that the training he received would prepare him for suitable work. We have reviewed the record and we conclude that each of the director's disputed findings could be reasonably made in light of the record as a whole.[7] Indeed, employer offers little argument as to why that is not the case. Employer faults the director for failing to support her conclusion with citation to what employer terms "expert or persuasive evidence." But employer does not explain why expert testimony would be required here, and its complaint about the lack of "persuasive" evidence appears to represent nothing

___

[6] Although it is debatable whether that is a finding of fact, as opposed to a legal conclusion, for purposes of this opinion we will treat it as a factual finding. Even if the conclusion is a legal one, factual findings underlie and lead to the conclusion and we may examine those underlying findings to determine whether they are supported by substantial evidence.

[7] We do not describe all the supporting and countervailing evidence in this opinion or explain in detail why we find the director's findings to be reasonable in light of all the evidence because no precedential purpose would be served by a extended discussion of the particular factual record developed in this case.

more than a disagreement with the director's weighing of the evidence. We also reject employer's specific claim that the director's conclusion that claimant had not received adequate vocational training is based solely "on the fact that claimant did not receive one particular job." To the contrary, the director found that claimant was misled as to the nature and content of the vocational training he would receive, that he was not hired for one job in the electrical field because he was not adequately trained, and that the job he later found was not suitable because claimant was not paid in a timely fashion and because of the allegation that his employer "might be using illegal practices," as the director put it.

In sum, substantial evidence in the record supports the director's factual findings. We find no error.

Affirmed.